Good morning, Your Honors. Did I get it right, one of those names, one of those pronunciations? Well, my French teacher in high school and the one in college would agree with you. However, my client pronounces her name Galat. She's entitled to have it pronounced as she wishes. I was doing my best. And that's the way I've pronounced it. Okay. May it please the Court, my name is John Rosen and I represent Ms. Galat and I also think she's entitled to a reversal of the summary judgment. I'm going to address the issues of false conflict and the sub-issues under those exhaustion of remedies and the time limits. And I'm then going to turn to the alternative choice of law standard most significant relationship. And finally, touch on the constitutional issues that were raised. Your big problem is this all happened in Idaho. Well, I mean, she lived in Idaho, she worked in Idaho, the division of the company she was working on was headquartered in Idaho. In this town I have never heard of, Lawrence? Lewiston. Lewiston. Thank you. It seems to me, I mean, this is just to lead into your argument, just off the bat, Idaho has the most significant interest here because this has to do with employer-employee relationships within the state of Idaho. The state of Idaho chooses to say, look, we want our EEOC, whatever their commission is called, to get on and investigate these things and get on to them very quickly rather than have them become stale. We want our regulators in there looking at it. It seems to me that's a pretty strong governmental interest. So I don't mean to prejudge the case or anything, but I'm just telling you what I think you need to address. Quite a bit did happen in Idaho. There's no question about that. But it happened under the auspices of a Washington employer. And Washington has taken a very strong position about controlling its own employers. You're relying on Burnside, I guess. Burnside. I'm relying very heavily on Burnside because that's the last pronouncement was in 2004. It was 1994. So 12 years ago, the Supreme Court in Burnside and the Court of Appeals a few years before that gave very strong direction to its belief that if you're a Washington employer, you better not violate our laws against discrimination. You're saying that although the reason that Burnside said it was a Washington employer is that it was incorporated in Washington, you're saying that your company ought to be in the same position, although it's a Delaware corporation, because its principal place of business is Washington. Is that how you're dealing with it? Under corporate laws, a company, a corporation can change its place of incorporation in a matter of days. It files in Delaware and then it can deregister in Delaware. So where it's incorporated really isn't the issue. It's where it does business. It can't dismantle its headquarters. It can't terminate its employees or transfer them. This is a Washington employer that's chosen to reside in Washington. That's the issue. It's its principal place of business from where all its policies emanate, where its philosophy emanates, where its social responsibility emanates. Just so I'm clear, there are two Burnside opinions. You're not relying on the Supreme Court opinion, right? I rely on both of them. Now, on the most significant contacts, that's the Court of Appeals decision, what we refer to as Burnside. And given that the Supreme Court has decided the same case on different grounds, what is the status of the Court of Appeals opinion under Washington law? It chose – it adopted most of what the – Insofar as it adopted things, then it becomes the Supreme Court's opinion. I don't have a – it clearly did not adopt this rationale. It affirmed – It didn't reach this rationale on most significant relationships. And what happens to it? Does it – under Washington law, does that then survive as precedent? Does it become superseded? I don't have any case law on that, but my understanding is that it remains certainly the law of the district. And I believe it was the first – not district, but division. And it's persuasive in the other divisions. But if I may, I'd like to get to the false conflict issue, which was addressed by the Supreme Court. Because any of these, I believe, are – if you find that there is a basis for these arguments, would result in reversal. And I believe there is a false conflict. If you look at the facts in Burnside and you look at the facts here, what you see is that there was an out-of-state decision that was made. And the court decided that, nevertheless, Washington law was going to apply because of the fact that the – in Burnside, the California statute, the Fair Employment and Housing Act, was not incompatible, was not fundamentally incompatible with the Washington law against discrimination, even though it had, just as Idaho has, a mandatory administrative resolution. It said, you know, even though there is this difference, it's not so incompatible to result in a different ruling. It says that the conflict – there was no conflict of purpose. And it cited the preambles of the statute, which speak the legislature's intentions as to eradicating discrimination. Idaho has certainly a similar, not identical, statement of purpose, but it is of the same type, to eradicate discrimination. The fact that there is this administrative resolution does not create a real conflict, says Burnside. Now, Burnside, the Supreme Court, also addressed the issue of the fact that there was the public policy termination. So they said, well, you see, I mean, in California, you can get around, if you will, the need for administrative filing by filing a public policy wrongful termination case. And you can do that, despite what the potlatch says, you can do that in Idaho, too, it appears. Now, there isn't any direct case in Idaho, Idaho Supreme Court case, that says that. Which cites with approval when – and that is the seminal case in Idaho on public policy terminations. What about Guy F. Atkinson Company? I'm sorry, what's that? Guy F. Atkinson Company, which is Washington, 432nd 80, 1965. Oh, no, that's Washington, right? Yes. Yes, it is. I do believe that the Jackson v. Minidoka is the first time that the Idaho Supreme Court addressed the issue, at least in an affirmative way, on public policy terminations. And one of the cases that it cites is Monge v. BB Rubber Company, a New Hampshire case from a few years earlier, which was, in effect, a sex harassment case. The individual, Ms. Monge, and I'm not sure how she would pronounce her name, actually, because Ms. Galat should get together. But she rejected the advances, sexual advances of her supervisor and was terminated. And this, of course, is – and this was in the early 70s when, you know, sex harassment really wasn't even a term of art. We all knew it was happening, but it was sort of accepted as the norm. What about Glynde v. The City of Blackfoot? The Blackfoot case is – first of all, it's dicta. Secondly, there was no claim under the Idaho Human Rights Act. There's just the Title VII claim. And it doesn't talk about the public policy terminations, other than it dismisses the public policy claim against the City of Blackfoot because there was a failure to file a notice of claim. And it never even – Very significant. I mean, that sounds to me like a holding. What's that? That sounds to me like pretty much a holding, right on point. No, she didn't bring the public policy claim – or actually, I don't know. It wasn't a she. It was a he. Didn't bring the public policy claim for a violation of the Human Rights Act. There were other wrongdoing that the – But what it says is, if you even were to read this, it says you still have to go to the Idaho Human Rights Commission. There's a recent case that I just found actually this morning when I was shepherdizing the latest cases and actually looking at the Idaho Human Rights Act to see if there were any changes there. And I came across a U.S. District Court for Idaho decision. Before we get to that, doesn't Brian specifically – this is on page 641 of the opinion, 40 AP 3rd, 636 of 641. It says, Brian argues that her complaint should be construed as alleging a claim under the Idaho Human Rights Act. And then they say, even with reading it this way, you would still have to go to the Human Rights Commission. This is later on in the same column. So doesn't Brian, which is a case from the Idaho Supreme Court, not so old, 2002, say that even if you come and bring a claim under the Idaho Human Rights Act, you still have to go to the commission? If you bring a claim under the IHRA, but not if you bring a claim for termination in violation of public policy. That's a different cause of action. Does Idaho have a common law rule against wrongful termination? That's the Jackson v. Minidoka case, and that was reaffirmed a number of times. We also cite the Hummer case, and that's Hummer v. Evans, a 1996 case, I believe. The Idaho statute reads as if it were setting up a remedy that is the exclusive remedy for this type of grievance. Idaho refers to Title VII, actually the Civil Rights Act of 1964, in its preamble. Title VII, as you all know, requires administrative exhaustion. However, in Zipes v. TWA Airlines, the Supreme Court said that this was not a jurisdictional issue, that there were all sorts of other equitable tolling, for example, waiver, and this was just reaffirmed this past term in the Oshbaugh v. YNH Corporation case, involving the minimum number of employees under Title VII. So these are not jurisdictional bars. And what our Washington Supreme Court said was that, again, the fundamental purposes of the law are not in conflict. And once the fundamental purposes of the law are not in conflict, then you do not have a real conflict. You have a false conflict, and Washington law applies. Do you want to say the remainder of your time for rebuttal? Yes, I would, but I guess that means no. So it's not like you can save it and also do something else. It's one of those binary choices. Are you suggesting I sit down now? I'm asking you whether you want to say your time for rebuttal. I have four minutes and seven seconds left, and I just want to take a few of those seconds, again, to talk about the most significant context. Washington has said in very, very strong terms in Burnside 1, which, again, is a court of appeals decision, but it was in no way weakened at the Supreme Court that in a discrimination case, it's going to make sure that its employers follow the law wherever they may violate it. Just as I feel that wherever my children may be, I'm going to be responsible for their behavior. So if a corporation is incorporated in Washington State and has employees in the 50 states of the union, in Puerto Rico, in the American Virgin Islands, and say nothing about places like France and Israel and South Africa, basically the human rights law of Washington State would apply to all of those. As you said earlier, we don't always do what we want to do. We do what we have to do, and the law requires that Washington employers follow the law. Now, here, remember, we're not talking about law in New York, and they follow the law in Canada, and they follow the law in Hawaii, and so anybody, any employee of the corporation in all those states can sue under the Washington human rights law. Well, that's what you're saying. Those are not the facts here, and as I said, we're not even talking with— Are you sure these are not the facts here? Are you sure? I thought this case involved a New York employee or a Canadian employee. It was an Idaho employee, but the— Are you sure? I was confused. I thought maybe it was a Canadian employee. I'm just totally confused. I'm sorry. No, it's definitely an Idaho employee. I don't know that it makes any difference whether it's Idaho or Medici. Then don't bother answering the question. The misguided was a relatively high, mid-level employee, which may be a contradiction in terms, but it's quite a bit different than a barista somewhere or a programmer sitting at a computer module somewhere in the world. What we have here is someone who has regular contacts with the home office in Washington State, and I think that's a significant fact for— I'm sorry. So the rule is not as extensive as you say. Not all employees, but only high-level employees. I don't know what the ruling ought to be with every employee, but that's not the case here. I mean, it might be that the Court would want to decide— Is there ever a case that involves every employee? I'm sorry? Is there ever a case that involves all employees? I don't know the answer to that question, but no, not every case involves every employee. However, the employer is responsible. I'm just about out of time, and the only thing I will say on the constitutional issue is that Judge Quackenbush really answered those questions in his earlier order denying the original motion to dismiss on jurisdictional grounds as well as the constitutional grounds. Thank you. I have eight seconds left. Hopefully I'll use them wisely. May it please the Court and the Counsel. I'm Mike McNichols, appearing here on behalf of Potlatch Corporation. I'd like to clear up two points before I begin my organized remarks. One, Judge Goodwin asked counsel whether there was an Idaho common law cause of action for employment discrimination, and counsel answered in the affirmative and cited a couple of cases. Those cases apply only to public policy discharges. Usually it's a case where an employer is accused of discharging an employee for filing a workers' compensation claim or some union activity, something like that. Those are the only cases that there are. And Idaho, as the Court said, I think by implication certainly in Bryant, has the Idaho Human Rights Act, which is designed to take care of everything else. Judge Shader mentioned that Washington might be the principal place of business, and for diversity purposes it might. The Potlatch Corporation has 4,000 or 5,000 employees. Maybe 100 would be in Washington. So that's where the chief executive is and the employee relations people are and those type of staff people. Washington has none of Potlatch's manufacturing plants. Is it permissible for a corporation such as Potlatch that's located in a great many places to say, we want to have a uniform rule that applies to our people in connection with discrimination, and therefore we're going to adopt a program, we're going to adopt Washington law for that purpose? That's the law that we're familiar with. Is that a permissible judgment for a corporation to make? No. A corporation is not the legislature, nor is the corporation. Is it permissible for the Washington legislature to do that? Certainly not. Really? I see that you said in your brief that you thought Burnside is wrong. Yes. Are we in a position really to decide that what the Washington courts have done is wrong? Not as such, because, of course, we must, in the diversity case, apply the law of the state. We are but tinkling cymbals under Erie v. Hopkins, right? Yes, yes. Sometimes to the point of absurdity, but yes. As Justice Kitsinci says, you have to apply the law whether you agree with it or not. But the State of Washington does not have the right to trump the law of every other State in the Union. That's your constitutional argument. It is. But Burnside, you're talking about the Supreme Court. That's the case that has two opinions, right? That is the case that has two opinions. And we're not bound by the Court of Appeal opinion, right? Court of Appeal's opinion. I don't know the answer to the question that you posed. There are two parts to the question. One part is, is our opinion still valid authority in Washington? And I guess nobody seems to know the answer to that one. But there's also the – I mean, we're just like another division of the Court of Appeals. Do they bind each other? No. They are binding – Does one division of the Court of Appeals in Washington bind another division? No. Okay, so we are like another division of the Court of Appeals, and we must predict what the Supreme Court of Washington would do. We could look at the sister division the way we would look at the sister circuit and say, oh, that was Judge Posner. You know, we don't have trump. Only I can say that. But I'm just talking about the relationship. We are in the same coordinated position. Even if the Burnside Court of Appeal opinion is still good law, it is not an opinion of the Supreme Court of the State. We can look at it and decide that it does not accurately predict what the Supreme Court would do and go out a different way. Yes. Particularly if you look at Burnside 1, the Court of Appeals decision, it says that the law of Washington applied because Simpson was incorporated in the State of Washington. Simpson's principal place of business was in California. It was in California where the discharge occurred. But the Court of Appeals said, oh, no, the only thing that counts is the state of incorporation. And, therefore, that's Washington, and Washington law applies. Now, if you were to apply the Burnside 1 decision to this case, it would be the law of Delaware that would apply. So I think you're sitting, as a sister, a far away law. We couldn't ever figure out how to do this. So as a sister division of the Court of Appeals in Burnside 1, I think you might not want to follow that case. Now, as you started Mr. Rosen's day, you mentioned, as I wanted to say, that everything here happened in Idaho. All the significant contacts are really Idaho contacts. There's only really one maybe significant contact with Washington. That is the fact that Potlatch currently has its corporate executive offices in Spokane. It didn't at the time? Pardon me? It didn't at the time? Yes, sir. And there's – I asked a negative question at you. Oh, you said – I thought you said it did at the time. Excuse me. It didn't at the time? Yes, it was headquartered there. The record is not – does not say when they moved there. There's a dispute. Counsel has extrapolated the wrong date. They've been there for about eight or nine years, previously in California, before that in Idaho. But the significant contacts are in Idaho. And a point of law, I don't think there's a dispute about this. A corporation has only one domicile, and that is the state of its incorporation. So Potlatch is domiciled in Delaware. The plaintiff worked for Potlatch in Lewiston, Idaho, for 24 years. She lived in Idaho for 16 of those 24 years. We've cited two cases – three cases, I think, from out of state and one Washington case which hold that the domicile or residence of a party is really not very important in resolving a conflict issue. And as I said, in Simpson – excuse me, in the Burnside One, Simpson Paper, the subsidiary, was a Washington corporation with its principal office in California. And so the – and also Burnside One, we think, was overruled by Rice. That's the later Washington case which says that the domicile or the state of incorporation is really not very important. Okay. It sounds to me like most of what you're saying is covered in your brief. Thank you. We'll hear – we'll get a little bit more about this from the Socialism Council.  And I will be brief. Thank you. The critical issue in Burnside was the fact that Simpson Paper was a Washington employer. How it became a Washington employer because it worked here as a foreign corporation with its incorporation papers somewhere else but got permission to work here or was a Washington corporation is irrelevant. It is a Washington corporation and, therefore, it is subject to Washington laws. As far as the court of being – just another court of appeals being bound by the Burnside One opinion, you know, there are the concepts of persuasive authority. There's concepts of comity. And, lastly, Burnside One was not overruled. Concepts of respectful disagreement. I'm sorry. I didn't hear you. Concepts of respectful disagreement. That's correct. There are those concepts too. Burnside One was not overruled by Rice. Choice of law is cause-of-action specific, and we talk about that in my brief. Good. Because your time is up. Because my time is up. So I'm sure you've read the brief. Thank you very much, Your Honor. The case is now at your stand for a minute. The next here argument in Alsop versus QBE.
judges: Goodwin, Kozinski, Shadur